IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY CHAMBERS, SR., | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA MEDIA | : | |
| NETWORK, et al., | : | |
|     Defendants. | : | NO. 11-6589 |

**MEMORANDUM**

PRATTER, J.                                                                               APRIL 15, 2013

Jerry Chambers has sued the Philadelphia Media Network and various reporters for publishing what he alleges are defamatory news articles related to his trial and conviction in the brutal murder of a three-year old girl. Certain defendants responded to Mr. Chambers's complaint by filing two motions to dismiss. For the reasons that follow, the Court grants both motions.

**I.    Factual Background and Procedural History**

On October 21, 2011, Mr. Chambers filed suit against the Philadelphia *Inquirer*, the Philadelphia *Daily News*, and the *South Philly Review*. Mr. Chambers alleged that these news organizations were located in Pennsylvania and that he was imprisoned in Waynesburg, Pennsylvania. He further alleged that the publications printed false articles about him after his arrest in 2003. Based on the allegations in his first complaint, it appears that these articles pertained to accusations that Mr. Chambers beat Porchia Bennett, threw her into a cast iron radiator, and killed her. An exhibit attached to the complaint indicates that the victim was three years old when she died. The complaint alleged that Mr. Chambers was convicted "on all charges except rape," averred that there was actually "no evidence" against Mr. Chambers, made

1

claims for race discrimination, defamation, and intentional infliction of emotional distress, and sought $60 million in damages.

On December 29, 2011, the Court ordered Mr. Chambers to file a written memorandum explaining the basis for the Court's subject-matter jurisdiction. In responding to this order, Mr. Chambers stated that all three Defendants were citizens of Pennsylvania[1] and that he believed the Court had subject-matter jurisdiction under 42 U.S.C. § 1983.

On April 11, 2012, Mr. Chambers filed a 145-page submission with the Court in which he again proclaimed his innocence and asked the Court to rule on his pending motion for appointment of counsel.[2] On July 11, 2012, the Philadelphia Media Network moved to dismiss Mr. Chambers's claims against the Philadelphia *Inquirer* and *Daily News*. Mr. Chambers filed a 202-page response to this motion on August 7, 2012. The motion to dismiss was deemed moot on September 13, 2012, when the Court granted Mr. Chambers's motion for leave to amend his complaint.

On October 2, 2012, Mr. Chambers filed his first amended complaint ("FAC") and named the Philadelphia Media Network, Inc., James Stokes, Lorraine Gennaro, Ken Dilanian, John Sullivan, Thomas Gibbons, and Clea Beason as defendants. The FAC alleges that the Philadelphia Media Network owns the Philadelphia *Inquirer* and *Daily News* and employs Messrs. Dilanian, Sullivan, and Gibbons and Ms. Beason as reporters.[3] The FAC further alleges that Mr. Stokes is the Vice President of Review Publishing LP, the owner of the *South Philly Review*, and that Ms. Gennaro is a reporter for the *South Philly Review*.

According to the FAC, the Defendants wrote and published defamatory articles about Mr. Chambers and the murder of Porchia Bennett. The FAC also avers that various government

---

[1] A June 8, 2012 letter sent by Mr. Chambers to the Court stated that he also is a citizen of Pennsylvania. *See* Docket No. 12 at 1.
[2] The Court subsequently denied this motion without prejudice.
[3] These four individuals have yet to answer or otherwise respond to the FAC.

officials provided false information to the Defendants that they then used in their articles. While many of the allegations in the FAC pertain to these government officials rather than to the Defendants, the FAC does contain some averments as to the conduct of the Defendants. For instance, the FAC alleges that the Defendants falsely reported that Mr. Chambers was a crack cocaine addict. Additionally, the FAC alleges that the Defendants acted "in concert with police and state officials to secure an unlawful and unsupported conviction," *see* Docket No. 34 at ¶ 20, but fails to plead any specific facts that support this conclusory statement.

The FAC states that its claims are "pursuant to . . . § 1983," *see id.* at 1, and that Mr. Chambers has suffered "deprivation of . . . constitution[al] rights, defamation, slander, intentional infliction of emotional distress, [and] racial discrimination," *see id.* at ¶ 29. Mr. Chambers seeks to recover $60 million from the Defendants, but "preserves his right[] to seek other damages at a later date." *See id.* at 5.

On October 19, 2012, Mr. Stokes and Ms. Gennaro moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), followed three days later by the Philadelphia Media Network's own motion to dismiss under Rule 12(b)(6). From December 19, 2012 to December 31, 2012, Mr. Chambers filed five responses to these motions totaling 214 pages. Having reviewed the relevant submissions of the parties, the Court will now rule on the two pending motions to dismiss.

## II.   Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in

3

original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand

that the Court turn its back on reality.  The Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

Finally, complaints filed by *pro se* litigants like Mr. Chambers are held to "less stringent standards" than those drafted by lawyers.  *See Henry v. Moore*, No. 12-2240, 2012 U.S. App. LEXIS 20624, at *3 (3d Cir. Oct. 3, 2012); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting their pleadings . . . [and] [w]e are especially likely to be flexible when dealing with imprisoned pro se litigants.")  Nonetheless, the Court does have a gatekeeper function to fulfill as to complaints filed by *pro se* litigants.  *See id.* at 245.

## III. Discussion

A "plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right *by a state actor*."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (emphasis supplied).  The question of whether an ostensibly private actor qualifies as a state actor hinges on "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."  *Id.* (citations and quotations omitted).  Courts determine whether state action exists by looking to: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."  *Id.* (citations and quotations omitted).

5

Here, the FAC fails to set forth facts which suggest plausibly that any of the Defendants are state actors. Instead, the FAC contains conclusory assertions that "all defendants were in concert with police and state officials to secure an unlawful and unsupported conviction." *See* Docket No. 34 at ¶ 20; *see also id.* at ¶ 14 (stating that the "defendants acted in concert with state officials" because they opted to not print information about Mr. Chambers's nephews). Such allegations do not and cannot give rise to a § 1983 claim against the Defendants. *See Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) ("Because the newspaper defendants are private parties and there is simply no indication that they acted under color of state law, the District Court did not err in dismissing Lewis' [§ 1983] claims against them."). Moreover, the FAC fails to contain facts which would suggest plausibly that Mr. Chambers has any sort of race discrimination claim. Finally, the Court declines to exercise supplemental jurisdiction over Mr. Chambers's state law claims. Therefore, the Court will dismiss the FAC in its entirety, without prejudice.

## IV. Conclusion

For the foregoing reasons, the Court grants the pending motions to dismiss without prejudice.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge