IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY CHAMBERS, SR., | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA MEDIA | : | |
| NETWORK, et al., | : | |
| Defendants. | : | NO. 11-6589 |

M E M O R A N D U M

PRATTER, J.                                                                                                                                                    SEPTEMBER 12, 2013

Jerry Chambers has sued the Philadelphia Media Network and various reporters for deprivation of his constitutional rights by their publication of what he alleges are defamatory news articles related to his trial and conviction in the brutal murder of a three-year old girl. *See generally Commonwealth v. Chambers*, 980 A.2d 35 (Pa. 2009). Before the Court are the remaining defendants' motions to dismiss Mr. Chambers's second amended complaint. For the reasons that follow, the Court grants both motions.

I.     Factual Background and Procedural History

Mr. Chambers filed suit against the Philadelphia *Inquirer*, the Philadelphia *Daily News*, and the *South Philly Review* on October 21, 2011. In his initial complaint, Mr. Chambers raised claims against the news organizations for race discrimination, defamation, and intentional infliction of emotional distress. In a subsequent memorandum, Mr. Chambers argued that the Court had subject matter jurisdiction under 42 U.S.C. § 1983; he did not and could not contend that the Court had diversity jurisdiction. *See Chambers v. Phila. Media Network*, No. 11-6589, 2013 WL 1628189 (E.D. Pa. Apr. 16, 2013), at *1. When the Philadelphia Media Network moved to dismiss Mr. Chambers's claims against the Philadelphia *Inquirer* and *Daily News*, the Court granted Mr. Chambers leave to file an amended complaint and mooted the motion to

1

dismiss. The following first amended complaint ("FAC"), filed on October 2, 2012, alleged that the Defendants wrote and published defamatory articles about Mr. Chambers and the murder of Porchia Bennett and averred that various government officials provided false information to the Defendants that they in turn used in their articles. *See* FAC, Docket No. 34. Together James Stokes and Lorraine Gennaro, respectively Vice President of and Reporter for the *South Philly Review*, as well as the Philadelphia Media Network, filed motions to dismiss in October 2012. Mr. Chambers responded in December with five filings totaling 214 pages.

The Court granted the Defendants' motions to dismiss Mr. Chambers's FAC without prejudice on April 15, 2013, on the grounds that the FAC failed to state a claim for relief. *See Chambers*, 2013 WL 1628189, at *3. Observing that Mr. Chambers's FAC raised claims "pursuant to . . . § 1983," *id.* at *2 (citing FAC, Docket No. 34, at ¶ 20), the Court held that Mr. Chambers had not pled facts sufficient to support a reasonable inference that the Defendants were state actors. Conclusory allegations that the Defendants were in concert with state authorities to produce an unlawful conviction, the Court held, could not support a § 1983 claim. *Id.* at *3.

On July 10, 2013, Mr. Chambers filed his second amended complaint ("SAC"). Like the FAC, the SAC raises claims "pursuant to [§] 1983." SAC, Docket No. 66, at 1. Contending that § 1983 actions may be "directed against police officers and/or *Private Parties* accused of *Conspiring* with them or the *Prosecution*," Mr. Chambers alleges that he has suffered "race, color, age and sex" discrimination, *id.* at 1-2, deprivation of his constitutional rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the Constitution, defamation, intentional infliction of emotional distress, and pain and suffering. Presumably to invoke the necessary state action, the SAC then avers that Mr. Chambers "can prove how [the Defendants were] *Conspiring With The Prosecution*," *id.* at 3, but it contains only this conclusory allegation

of such concerted action, *see id.* at 3. Mr. Chambers seeks $60 million in damages in addition to injunctive relief.

On July 17, having reviewed the SAC, the Court liberally construed it as bringing claims solely against the Philadelphia Media Network, Mr. Stokes, and Ms. Gennaro. Order, Docket No. 68. On August 13, Mr. Stokes and Ms. Gennaro moved to dismiss Mr. Chambers's claims against them. Three days later, the Philadelphia Media Network likewise moved to dismiss the claims against the Philadelphia *Inquirer* and *Daily News*. Mr. Chambers filed his response on September 3, 2013. Having reviewed both parties' filings, the Court now grants the Defendants' motions to dismiss for the reasons that follow.

## II.     Legal Standard

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). An assessment of the sufficiency of a complaint is thus "a

context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) (citations omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must only consider those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Twombly*, 550 U.S. at 555 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court also must accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). That admonition does not demand that the Court turn its back on reality. The Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and quotations omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations and quotations omitted).

Finally, complaints filed by pro se litigants like Mr. Chambers are held to "less stringent standards" than those drafted by lawyers. *See Henry v. Moore*, 500 F. App'x 115, 117 (3d Cir. 2012); *see also Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) ("[W]e tend to be flexible when applying procedural rules to pro se litigants, especially when interpreting

4

their pleadings . . . [and] [w]e are especially likely to be flexible when dealing with imprisoned pro se litigants.") Nonetheless, the Court does have a gatekeeper function to fulfill as to complaints filed by pro se litigants. *See Mala*, 704 F.3d at 245.

**III.   Discussion**

"To state a claim under § 1983," a plaintiff must aver two distinct elements: He must not only "allege the violation of a right secured by the Constitution and laws of the United States," but he must also "show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *accord Galena v. Leone*, 638 F.3d 186, 196-97 (3d Cir. 2011). This second element, which is identical to the Fourteenth Amendment's "state action" requirement, *United States v. Price*, 383 U.S. 787, 794 n.7 (1966); *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009), means that § 1983 protects against constitutional violations by the *state*, but "not against wrongs done by *individuals*," *Price*, 383 U.S. at 799 (emphasis added) (citation omitted). Only where the *state* is responsible for the specific conduct causing the alleged harm does section 1983 apply. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141-42 (3d Cir. 1995); *see Kach*, 589 F.3d at 646 ("[A] plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor.").

Of course, private individuals are not immune from suit under § 1983 if they engage in state action in the course of violating "a right secured by the Constitution and the laws of the United States." *Mark*, 51 F.3d at 1141. To determine whether an apparently private actor has engaged in state action, courts ask "whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Kach*, 589 F.3d at 646 (citation omitted). The Supreme Court has identified three tests for answering that question; one is relevant here: "whether the private party has acted with the help

of or in concert with state officials." *Id.*[1] At the motion to dismiss stage, when a plaintiff alleges that such concerted action has occurred in furtherance of a conspiracy, as here, the Third Circuit Court of Appeals, consistent with *Twombly* and *Iqbal*, requires the plaintiff to "assert facts from which a conspiratorial agreement can be inferred," *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). In other words, the Court must plausibly be able to infer an agreement between the defendants and state officials—a "meeting of the minds"—to violate the plaintiff's rights. *Zenquis v. City of Philadelphia*, 861 F. Supp. 2d 522, 528-29 (E.D. Pa. 2012) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)).

      Thus, regardless of whether Mr. Chambers has adequately pled claims for unconstitutional discrimination (under the first prong of the § 1983 test), the dispositive question here is whether the SAC alleges facts that plausibly suggest, or support the reasonable inference, that the Defendants engaged in state action by acting in concert with state authorities. In his SAC, Mr. Chambers alleges that the Defendants were "*Conspiring With The Prosecution*," SAC, Docket No. 66, at 3, and in his response to the Defendants' motions to dismiss, he adds that the Defendants were "'in concert' with police and State Officials" because the Defendants never performed a proper investigation giving the plaintiff "a fair chance," Response, Docket No. 76 at 2; *see also id.* at 5. The gravamen of these charges seems to be that the Defendants negligently, or even intentionally and discriminatorily, printed misinformation about Mr. Chambers and his involvement in the death of Porchia Bennett. But Mr. Chambers's conspiracy allegations are conclusory and lack any specific factual content to establish that any of the Defendants acted in

---

[1] The other two inquiries are: "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state" and "whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646 (internal quotation marks and alteration omitted). Mr. Chambers has neither alleged nor argued anything that would suggest that either of these tests is applicable.

6

concert with state officials. *See also, e.g.*, SAC, Docket No. 66, at 2 (accusing the Defendants of "showing *Prejudice* against the Plaintiff before and after his trial"); *id.* at 3-4 (stating that the Defendants allegedly conspired with the prosecution because both the Commonwealth and the Defendants were "surprised to learn that [a] different version exists about Porchia's death" than the "[f]abricated story [Philadelphia Department of Human Services] worker Joseph Maiden wrote in his progress notes").

Mr. Chambers's mere assertion that the Defendants conspired with state officials is not enough to suggest state action under § 1983. Proving concerted action or conspiracy with state officials would require more than proving, even if Mr. Chambers could, that the Defendants discriminated against Mr. Chambers or were otherwise racially motivated, negligent, or both in their reporting. (In any case, the SAC does not contain facts which would plausibly suggest any sort of discrimination claim.) It would require more than proving that the Defendants failed to investigate Mr. Chambers's side of the story, and that this failure resulted from some prejudice they might have. *See, e.g.*, SAC, Docket No. 66, at 3 ("they abandoned their oath and duty as reporters . . . to report the truth"); Response, Docket No. 76, at 2 (alleging that the Defendants failed to investigate when the Philadelphia Department of Human Services "[d]rop[ped] [t]he [b]all"). It would require more than the Defendants' knowingly reporting a false story (Mr. Chambers alleges, for instance, that "the Defendants knew that was a bogus statement they printed," Response, Docket No. 76, at 3). *See Antoine v. Star Ledger of N.J.*, No. 09-1827, 2010 WL 1838611 (D.N.J. May 6, 2010), at *3 (holding that allegations that "defendants were responsible for the violations of his First, Fourth, Fifth, and Fourteenth amendment rights because they reported a false story, despite knowing the true facts behind the matter," were insufficient to "state a claim under § 1983" where the plaintiff "ha[d] not pleaded facts demonstrating that the defendants were clothed with the authority of the state"). It would require

more than proving that, additionally, such discriminatory reporting coincidentally helped state authorities obtain Mr. Chambers's allegedly unlawful conviction (Mr. Chambers claims, for instance, that "the grand jury, when writing about Porchia Bennett, relied on publish[ed] news accounts of her death, which contained the *MISINFORMATION*").

Rather, Mr. Chambers would ultimately have to prove that the Defendants and state authorities reached an agreement to discriminate against him or otherwise deprive him of his federal rights. But none of his factual allegations plausibly suggest any such meeting of the minds, and for that reason, Mr. Chambers cannot resort to federal court to vindicate his claims under § 1983.[2] Without more—here, specific allegations of an agreement—the Court cannot reasonably infer that a conspiracy, and thus state action, existed.

Finally, finding that Mr. Chambers has failed to state a federal claim under § 1983, the Court declines to exercise supplemental jurisdiction over his state law claims. Therefore, the Court will dismiss the SAC in its entirety, with prejudice.

## IV.  Conclusion

 For the foregoing reasons, the Court grants the pending motions to dismiss with prejudice.

An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge

---

[2] Courts often dismiss § 1983 actions against news organizations in similar alleged circumstances for lack of state action. *See, e.g.*, *Mierzwa v. United States*, 282 F. App'x 973, 978 (3d Cir. 2008); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006).